## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GARY TRAVIS, NANCY TRAVIS, and AARON LIGHT, | ) ) ) |
| Plaintiffs, | ) **CIVIL ACTION** ) |
| v. | ) No. 09-1369 ) |
| FARM BUREAU MUTUAL INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment. (Doc. 20). The motion has been fully briefed and is ripe for decision. (Docs. 21, 22, 24, 25). Defendant's motion is granted for the reasons herein.

**I.  FACTS**

The court appreciates the parties' stipulation of facts (Doc. 18) and incorporates those facts herein.

Defendant Farm Bureau Mutual Insurance Company (Farm Bureau) issued a "Member's Choice Policy," number 7337268, to plaintiffs that was in force on May 1, 2008 (Farm Bureau Policy). The Farm Bureau Policy, with all of its attached forms, was delivered by mailed to plaintiffs shortly after it was first purchased.

On May 1, 2008, at or about the 800 block of Radio Lane in Arkansas City, Cowley County, Kansas, vehicles operated by plaintiff Aaron Light and Selina Graham collided, and Light suffered bodily injuries as a result.

On May 7, 2008, Light signed an Application for Benefits -

Personal Injury Protection. The application contained an authorization for Light's doctors, hospital, employer or other persons to furnish information and records requested by Farm Bureau.

On May 16, 2008, a Farm Bureau adjuster had a telephone conversation with Jim Everett of Farmers Insurance Group, Ms. Graham's liability insurer. Mr. Everett told the adjuster that "his limits are 50,000 - he'll be offering them."

On May 22, 2008, Vicki Case, PIP Claims Adjustor, Farm Bureau Financial Services, sent a written Inter-Company Subrogation Notification to Mr. Everett of Farmers Insurance Group in which she presented personal injury protection (PIP) subrogation claim for $9,500, which Farm Bureau had paid as a result of Light's injuries.

On May 30, 2008, Gary and Nancy Travis sent correspondence to Bill Fontaine, a Farm Bureau agent whose office is located in Arkansas City, Kansas. They asked Mr. Fontaine to provide a copy of their insurance policy covering the vehicle Light was driving on May 1, 2008 to counsel for Light, Ryan T. Fry.

On June 27, 2008, Mr. Fry sent correspondence to Mr. Fontaine confirming a June 26, 2008, conversation in which Mr. Fry requested and Mr. Fontaine agreed to provide a copy of the Travis' policy as it related to the vehicle Light was driving on May 1, 2008.

Shortly after June 27, 2008, Mr. Fry received a copy of renewal declaration pages of the Farm Bureau Policy from Mr. Fontaine's office. Mr. Fontaine or his staff did not send a complete copy of the Farm Bureau Policy and, in particular, did not send a copy of form PKKS.MAUMU.0904 which set out the terms and conditions of the underinsured motorist benefits provided under the policy. Thereafter,

neither Light, nor his representatives requested a complete copy of the Farm Bureau Policy until after April 6, 2009.

On June 30, 2008, Mr. Fry sent correspondence to and received by Ms. Case, which stated, in pertinent part:

> The opposing driver, S[e]lina Graham, who is covered by Farmer's Insurance Group, maintained a policy with a coverage limit of $50,000. Given Mr. Light's expenses and liabilities, his obligations will eclipse the $50,000 in policy limits fairly quickly. As a result, please consider this letter our formal notice against Mr. Light's underinsured portion of his policy.
>
> [O]nce my client has completed his treatment and subsequent physical therapy, we will be forwarding a demand packet to your company with regard to the underinsured coverage.

On July 11, 2008, Ms. Case sent correspondence to and received by Mr. Fry. A portion of the correspondence stated:

> Your information in regards to policy limits for S[e]lina Graham is appreciated. I have notified Ms. Adele Johnson that there will be an underinsured claim for Mr. Light. Please direct your demand package to Ms. Johnson.

On or before July 17, 2008, Light entered into a settlement with Ms. Graham and her liability insurer. Light signed a release in favor of Ms. Graham which states, in part:

> For and in consideration of the sum of Fifty Thousand Dollars and 00 cents ($50000.00), receipt of which is hereby acknowledged, I [Aaron Light] release and forever discharge Selina Graham, their [sic] principals, agents, and representatives from any and all rights, claims, demands, and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to injuries arising from an accident that occurred on or about 05/01/2008 at or near Arkansas City Kansas.

Farm Bureau made no contact with Light or his representatives regarding subrogation on the claim against Ms. Graham within sixty (60) days of its receipt of the June 30, 2008, correspondence.

On March 18, 2009, Mr. Fry sent correspondence to and received by Adele Johnson, Farm Bureau Financial Services, Wichita, Kansas. Mr. Fry provided correspondence to Ms. Johnson in accordance with the instructions in Ms. Case's July 11, 2008, correspondence. In the correspondence to Ms. Johnson, Mr. Fry, on behalf of Light, made a demand against Farm Bureau Mutual for underinsured motorist benefits, under the Farm Bureau Policy, in the amount of $250,000.

On March 24, 2009, a Farm Bureau adjuster called Mr. Everett of Farmers Insurance Group about Light's claim. Mr. Everett reported "his filed [sic] is closed and 'archived'" so he can't see what has been paid. Mr. Everett stated he would retrieve his file and call the Farm Bureau adjuster "about what has been paid."

On April 6, 2009, Ms. Johnson sent correspondence to and received by Mr. Fry. In the correspondence, Farm Bureau denied Light's demand for underinsured motorist benefits under the Farm Bureau Policy. (Doc. 18, exh. 11).

## II. SUMMARY JUDGMENT STANDARDS

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified

Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III. ANALYSIS

Defendant removed plaintiffs' case on November 20, 2009. The court has diversity jurisdiction over plaintiffs' case pursuant to 28 U.S.C. § 1332. Therefore, Kansas substantive law governs the case. Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1448 (2010).

Two Kansas statutes are pertinent to this case:

> An underinsured motorist coverage insurer shall have subrogation rights under the provisions of K.S.A. 40-287 and amendments thereto. If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured. Such written notice shall include written documentation of pecuniary losses incurred, including copies of all medical bills and written authorization or a court order to obtain reports from all employers and medical providers. Within 60 days of receipt of this written notice, the underinsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The underinsured motorist coverage insurer is then subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage. If the underinsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within 60 days, the underinsured motorist coverage insurer has no right of subrogation for any amount paid under the underinsured motorist coverage.

-5-

K.S.A. 40-284(f).

> The policy or endorsement affording the coverage specified in K.S.A. 40-284 may further provide that payment to any person of sums as damages under such coverage shall operate to subrogate the insurer to any cause of action in tort which such person may have against any other person or organization legally responsible for the bodily injury or death because of which such payment is made, and the insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may thereafter result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death for which payment is made by the insurer. Such insurer may enforce such rights in its own name or in the name of the person to whom payment has been made, as their interest may appear, by proper action in any court of competent jurisdiction.

K.S.A. 40-287.

Pursuant to K.S.A. 40-287, an insurer that provides underinsured motorist coverage (here, Farm Bureau) is subrogated to the proceeds of any settlement for bodily injuries paid by another insurance company (here, Farmers Insurance Group) to an injured party who has underinsured motorist coverage (here, plaintiffs). If the insured fails to provide notice to the underinsured motorist carrier of a tentative settlement and as a result, cuts off the underinsured motorist carrier's subrogation rights, the insured is deemed to have forfeited his underinsured motorist coverage provided in his policy. <u>Dalke v. Allstate Ins. Co.</u>, 23 Kan. App. 2d 742, 749, 935 P.2d 1067, 1072 (Kan. Ct. App. 1997). That is Farm Bureau's position: plaintiffs failed to comply with their statutory notice obligation and therefore Farm Bureau has no obligation to pay underinsured motorist benefits.

Plaintiffs attempt to avoid the result dictated by <u>Dalke</u> with three arguments: (1) Mr. Fry gave Farm Bureau adequate notice of the settlement; (2) Farm Bureau "consented" by implication to the

-6-

settlement; and (3) Farm Bureau waived its subrogation rights. Each of plaintiffs' arguments centers around the correspondence between Mr. Fry and Farm Bureau representatives. Plaintiffs' position is that the exchange of correspondence creates issues of material fact which preclude summary judgment. The court disagrees.

The court is sympathetic to plaintiffs' situation and is mindful that its ruling may have collateral consequences. The court has considered plaintiffs' arguments, but they do not raise disputed issues of fact in view of the clear and unequivocal language of K.S.A. 40-284 which requires that written notice of any tentative settlement <u>must</u> be given to the underinsured motorist carrier, here Farm Bureau, <u>before</u> the settlement. This is made clear in <u>Dalke</u>. Even if Mr. Fry's June 30, 2008, letter could be construed as sufficient notice of Light's tentative settlement with Ms. Graham, (a highly doubtful construction) Light did not allow 60 days before entering into the settlement agreement on July 17, 2008. K.S.A. 40-284(f) provides, in effect, that the insured must wait 60 days to allow the insurer to make an offer of a substitute settlement and consequently preserve its right of subrogation under K.S.A. 40-287. The fact that Farm Bureau failed to provide a full copy of plaintiffs' policy does not create a dispute because the 60-day requirement is part of a statute, not policy language.

Plaintiffs' argument that they were following Ms. Case's advice in letter dated July 11, 2008, by sending their demand to Ms. Johnson, is not persuasive. (Doc. 18, exh. 8). Nowhere in the parties' exhibits detailing the correspondence between Ms. Case, Ms. Johnson, and Mr. Fry does Farm Bureau instruct Mr. Fry to enter into a

settlement agreement with Ms. Graham, nor does it consent to such a settlement.

The court has carefully considered <u>Davis v. Prudential Property and Cas. Ins. Co.</u>, 961 F. Supp. 1496 (D. Kan. 1997) aff'd 139 F.3d 911 (10th Cir. 1998). The key distinguishing factor in <u>Davis</u> is that the requisite notice <u>was</u> given; here, it was not.

The bottom line is that Mr. Fry did not give Farm Bureau the required statutory notice of the settlement nor did he secure Farm Bureau's consent to the settlement. This cut-off Farm Bureau's subrogation rights and Farm Bureau did not waive such rights. <u>See Western Motor Co., Inc. v. Koehn</u>, 242 Kan. 402, 405, 748 P.2d 851, 853 (1988) ("An insurer claiming the right of subrogation stands in the shoes of its insured, and any defenses against the insured are likewise good against the insurer."). As a result, plaintiffs forfeited their UIM benefits under their policy with Farm Bureau.

## IV. CONCLUSION

Because plaintiffs' forfeited their UIM benefits under their Farm Bureau policy, Farm Bureau's motion for summary judgment on plaintiffs' breach of contract claim (Doc. 20) is granted.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise

available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u>.

IT IS SO ORDERED.

Dated this <u> 9th </u> day of August 2010, at Wichita, Kansas.

<u>s/ Monti Belot                  </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE